**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| SC CITIZENS FOR EQUAL ENFORCEMENT OF GAMBLING LAWS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> DAVE & BUSTER'S ENTERTAINMENT, INC., <br><br> Defendant. | Civil Action No. _____ <br><br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

**NATURE OF THE ACTION**

1. Plaintiff SC Citizens for Equal Enforcement of Gambling Laws, LLC ("Citizens for Equal Enforcement" or "Plaintiff") brings this action under S.C. Code Ann. § 32-1-20 for the recovery of individual gambling losses in excess of fifty dollars ($50.00) against Defendant Dave & Buster's Entertainment, Inc. ("D&B Entertainment" or "Defendant") arising from Defendant's operation of unlawful redemption gaming machines at its Dave & Buster's locations in Myrtle Beach, Columbia, and Greenville, South Carolina.

2. Defendant's redemption gaming machines permit patrons to deposit money for the purpose of trying to "win" more by playing games of skill or chance. The prizes available at Defendant's in-store redemption centers include high-value electronics and consumer goods. This "opportunity to win" constitutes gambling under South Carolina law, and Defendant is therefore the "winner" of gambling losses sustained by patrons within the meaning of S.C. Code Ann. § 32-1-20.

1

3. Plaintiff, as a "person" authorized to sue under S.C. Code Ann. § 32-1-20, seeks to recover treble the value of gambling losses sustained by those patrons who lost more than $50.00 at any single time or sitting at Defendant's South Carolina locations (hereinafter "Gambling Losers")—plus the costs of this suit, with one moiety going to Plaintiff and the other moiety going to the county or counties in which the offenses were committed.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

5. Plaintiff Citizens for Equal Enforcement is a South Carolina limited liability company. All of its members are residents of the State of South Carolina. Plaintiff is therefore a citizen of South Carolina for purposes of diversity jurisdiction.

6. Defendant Dave & Buster's Entertainment, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Coppell, Texas. Defendant is therefore a citizen of Delaware and Texas for purposes of diversity jurisdiction.

7. Complete diversity exists between the parties. The amount in controversy substantially exceeds $75,000 given the volume of gaming transactions at Defendant's three South Carolina locations and the treble damages available under S.C. Code Ann. § 32-1-20.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including at Defendant's Dave & Buster's location in Myrtle Beach, South Carolina, which is within the Florence Division of the District of South Carolina.

## THE PARTIES

9.  Plaintiff Citizens for Equal Enforcement is a South Carolina limited liability company. All of its members are residents and citizens of the State of South Carolina. Plaintiff brings this action as a "person" authorized to sue under S.C. Code Ann. § 32-1-20 for the recovery of gambling losses sustained by patrons at Defendant's South Carolina gaming locations. Plaintiff has not colluded with any Gambling Loser in bringing this action.

10. Defendant Dave & Buster's Entertainment, Inc. ("D&B Entertainment") is a corporation organized under the laws of the State of Delaware with its principal place of business in Coppell, Texas. Defendant's common shares are publicly traded on the Nasdaq Global Select Market under the ticker symbol "PLAY." Defendant owns and operates Dave & Buster's entertainment venues throughout the United States, including three locations in South Carolina as described herein.

## FACTUAL ALLEGATIONS

### A.    DEFENDANT'S SOUTH CAROLINA OPERATIONS

11. Defendant owns and operates three Dave & Buster's venues in South Carolina offering entertainment and dining experiences for adults and families. These locations are situated in Myrtle Beach, Columbia, and Greenville, South Carolina.

12. According to Defendant's most recent Annual Report filed with the U.S. Securities and Exchange Commission, game play is described as "a key aspect of the entertainment experience at each of our stores" and as "the core differentiating feature of our brands."

13. Defendant operates what it calls "The Midway" at each of its stores—a dedicated area offering a wide array of entertainment options, including both redemption and simulation games. According to Defendant's Annual Report, Dave & Buster's and Main Event stores

average more than 80 and 100 redemption and simulation games, respectively, depending on the location footprint.

14. Most of Defendant's games are activated by game play credits loaded onto cards or RFID devices. A customer purchases a card with game play credits or "chips" at an automated kiosk, through Defendant's mobile application, or from a store employee. Defendant's Annual Report discloses that entertainment revenues accounted for approximately 65.2% of its total revenues during fiscal year 2024.

15. According to Defendant's Annual Report, entertainment offerings generate a gross margin of approximately 91.5% for fiscal year 2024, making entertainment revenue the dominant and most profitable segment of Defendant's business model.

**B.    DEFENDANT'S GAMING MACHINES AND POWER CARD SYSTEM**

16. Defendant operates both skill-based and chance-based video game machines at its entertainment and redemption centers located within each South Carolina venue.

17. Skill-based games operated by Defendant include, without limitation, skee-ball and various types of basketball shooting games.

18. Chance-based games operated by Defendant include, without limitation, quarter pushers and spin-the-wheel games.

19. Below is a true and accurate photograph of the "Spin N Win" game in operation at Dave & Buster's, 1025 Woodruff Road, Greenville, South Carolina on March 29, 2026.



20.    Below is a true and accurate photograph of the "Spin Out" game in operation at Dave & Buster's, 1325 Celebrity Circle, Myrtle Beach, South Carolina on April 3, 2026.



21.    Below is a true and accurate photograph of a roulette-styled game in operation at Dave & Buster's, 1325 Celebrity Circle, Myrtle Beach, South Carolina on April 3, 2026.



22.    Below is a true and accurate photograph of a quarter pusher game in operation at Dave &

Buster's, 1325 Celebrity Circle, Myrtle Beach, South Carolina on April 3, 2026.



23.    Both skill-based and chance-based games are played by inserting a "Power Card" loaded

with game credits. Power Cards are sold in the following credit denominations: $120, $90,

$75, $60, $55, $45, $35, and $25, as depicted below.



Mar 29, 2026 12:09:50 PM
1025 Woodruff Road
Greenville County
South Carolina

24.    Players win points or "tickets" while playing the various games. Tickets are stored electronically on the player's Power Card rather than being dispensed physically.

25.    Most of Defendant's games feature bonus ticket features and jackpot features that allow players to win substantially more tickets than the base game otherwise provides.

26.    The more tickets a player accumulates, the more valuable a prize the player can acquire through redemption at Defendant's in-store redemption centers.

### C.    DEFENDANT'S HIGH-VALUE PRIZE REDEMPTION PROGRAM

27.    Defendant operates redemption centers within each of its South Carolina stores where players may exchange their accumulated electronic tickets for merchandise prizes.

28.    The prizes available at Defendant's redemption centers range from inexpensive novelty items to high-value consumer electronics, including without limitation: Apple iPad Air M3 (retail value approximately $750); Sony PlayStation 5 (retail value approximately $570); Nintendo Switch (retail value approximately $450); Xbox 512 GB (retail value

approximately $425); Meta Quest 2 (retail value approximately $300); Meta Quest 3 (retail value approximately $300); Apple AirPods (retail value approximately $120); noise-canceling headphones (retail value approximately $100); Brookstone robotic vacuum cleaner (retail value approximately $300); wireless stereo speakers; and Pixcent HD multimedia projector.

29.    High-end prizes available for redemption at Dave & Buster's, 1325 Celebrity Circle, Myrtle Beach, South Carolina on April 3, 2026, are depicted below.

 

30.    In addition to prizes, players can trade their tickets in for "dining dollars." For every 1,000 tickets, players get $5 of dining credits, up to $50, as depicted below.



31. Players can also trade their tickets for free game play. For example, 1,250 tickets can be traded for 30 minutes of unlimited game play.

32. Defendant's Annual Report expressly promotes the premise of its business model, stating that "[t]he opportunity to win" creates "a fun and highly energized social experience that is an important aspect of the in-store experience and cannot be easily replicated at home."

**D.    DEFENDANT'S REDEMPTION GAMING OPERATION CONSTITUTES ILLEGAL GAMBLING UNDER SOUTH CAROLINA LAW**

33. In *Dragon's Ascent Video Gaming Mach. v. S.C. Law Enf't Div.*, 445 S.C. 252, 258, 912 S.E.2d 407, 410 (Ct. App. 2025), *reh'g denied* (Mar. 12, 2025), *cert. denied* (Sept. 9, 2025), the South Carolina Court of Appeals addressed the legal question of whether South Carolina gambling statutes prohibit only games of pure chance or whether those statutes also prohibit machines or devices that allow games of skill to be used for gambling.

9

34. The Court of Appeals concluded that South Carolina law prohibits licensed video games that are used for gambling, regardless of whether the game involves skill, chance, or a combination of both.

35. The Court further addressed whether the chance to win a prize by playing a skill-based video game constitutes gambling. In doing so, the Court relied upon its earlier decision in *Town of Mount Pleasant v. Chimento*, 401 S.C. 522, 533, 737 S.E.2d 830, 838 (2012), which explained that "whether an activity is gaming/gambling is not dependent upon the relative roles of chance and skill, but whether there is money or something of value wagered on the game's outcome."

36. The Court of Appeals ultimately ruled that South Carolina law, and particularly S.C. Code Ann. § 12-21-2710, prohibits "gaming machines that attract players to deposit money for the purpose of trying to 'win' more, whether by skill or chance."

37. Following the Supreme Court's refusal to review the Court of Appeals' decision in *Dragon's Ascent*, a bill (H. 4129) was introduced in the South Carolina House of Representatives. This bill would have carved out from the definition of "gambling," any non-card-based predominant skill game, activity, or event and would allow the person to receive a thing of value proportionate to how skillfully he plays the game.

38. H. 4129 passed the House on May 8, 2025, and was sent to the Senate and referred to the Senate Judiciary Committee on the same date. The bill remains in Committee and has not been passed into law.

39. Defendant's redemption gaming machines are precisely the type of machines prohibited by South Carolina law. Patrons purchase Power Card gaming credits at kiosks for the

10

express purpose of trying to "win" more—in the form of tickets redeemable for valuable prizes—whether by skill or chance.

40. The prizes available at Defendant's redemption centers, ranging from branded novelty items to high-end consumer electronics, constitute "something of value" within the meaning of South Carolina gambling law. Defendant's own Annual Report concedes that the "opportunity to win" these prizes is a central and commercially significant feature of its business model, stating "[w]e believe this 'opportunity to win' creates a fun and highly energized social experience that is an important aspect of the in-store experience and cannot be easily replicated at home."

41. Furthermore, Defendant's own Annual Report discloses a gross margin from entertainment revenue of 91.5% for fiscal year 2024. At that margin, Defendant retains $0.915 of every $1.00 loaded onto a Power Card, leaving the patron with less than $0.09 in prize value per dollar spent. Accordingly, a patron who loads $55.00 onto a Power Card loses $50.33 on average at a single sitting—an amount that exceeds the $50 statutory threshold under S.C. Code Ann. §§ 32-1-10 and 32-1-20.

42. Accordingly, each patron who deposits money onto a Power Card and plays Defendant's redemption gaming machines at its South Carolina locations is engaged in unlawful gambling within the meaning of South Carolina law, and Defendant is the "winner" of any losses incurred by such patrons.

### E.     GAMBLING LOSERS' LOSSES

43. For the Fiscal Year ending February 4, 2025, D&B Entertainment had gross entertainment revenues of $1,391,000,000, and the reported cost of entertainment was $118,600,000, for a gross profit of $1,272,400,000 across 232 stores. The average gross profit per store was

$5,484,483—representing the average net amount Defendant won from patrons at each of its locations during that fiscal year.

44. This average gross profit of $5,484,483 is the net gambling winnings the Defendant obtained from thousands of individuals who "gambled" on Defendant's illegal redemption machines in South Carolina and have lost, and continue to lose, more than $50.00 at any single time or sitting by playing games of chance and skill for the opportunity to win prizes at Defendant's South Carolina locations.

45. These Gambling Losers have not sued to recover those losses within the three-month period following their payments to Defendant as provided by S.C. Code Ann. § 32-1-10.

46. The identity and precise number of such Gambling Losers is within the unique possession of Defendant and can be readily obtained through the customer data Defendant tracks through its Power Cards.

47. For all the reasons set forth herein, Defendant is a gambling "winner" within the meaning of S.C. Code Ann. § 32-1-20.

48. Plaintiff qualifies as a "person" authorized to sue for the recovery of gambling losses at gaming within the meaning of S.C. Code Ann. § 32-1-20.

49. Plaintiff has not colluded with any Gambling Loser in bringing this action.

50. To Plaintiff's knowledge, no other "person" has sued under S.C. Code Ann. § 32-1-20 in connection with the conduct of Defendant within this case.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE STATUTE OF ANNE**
**(S.C. CODE ANN. §§ 32-1-10 AND 32-1-20)**

51. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

52. South Carolina's Statute of Anne, derived from the English Statute of Anne of 1710, has been part of South Carolina law since 1712. The statute has changed very little since its adoption, save for occasional updates to the monetary threshold for claims. *See Proctor v. Whitlark & Whitlark, Inc.*, 414 S.C. 318, 327, 778 S.E.2d 888, 893 (2015) (quoting *Justice v. The Pantry*, 335 S.C. 572, 577 n.2, 518 S.E.2d 40, 43 n.2 (1999)).

53. S.C. Code Ann. § 32-1-10 provides that if any person, at "any time or sitting," loses the "value of fifty dollars" or more either by playing "any . . . game whatsoever or by betting on the sides" of those who play games, such person may sue within three months to "recover the money or goods" plus the "costs of suit."

54. S.C. Code Ann. § 32-1-20 further provides that if the three-month period expires without suit by the losing party, "any other person" may "sue for and recover the same and treble the value" of the gambler's losses, plus the "costs of suit, against such winner or winners," with "the one moiety" going to "the person that will sue" and "the other moiety" going to "the county in which the offense shall have been committed."

55. In 2000, the South Carolina Legislature clarified that the State's general prohibition on gambling extended to video gambling. As part of that Act, the Legislature specified that the Statute of Anne shall "apply only to those gambling activities not authorized by law." S.C. Code Ann. § 32-1-60. As the South Carolina Supreme Court has explained, this provision was intended to confirm the abrogation of the doctrine of *in pari delicto* in the context of recovery for illegal gambling losses and did not limit the Statute of Anne's reach. *Whitlark & Whitlark, Inc.*, 414 S.C. at 328, 778 S.E.2d at 893. Indeed, the Legislature purposefully retained §§ 32-1-10 and 32-1-20, confirming its clear intent for gamblers or third parties to recover losses sustained through illegal gambling. *Id.*

56. Defendant's operation of redemption gaming machines at its South Carolina locations constitutes gambling that is not authorized by law within the meaning of S.C. Code Ann. § 32-1-60.

57. The Gambling Losers are persons who lost $50.00 or more at any single time or sitting by playing Defendant's redemption gaming machines at Defendant's South Carolina locations and who did not sue to recover those losses within three months of payment.

58. Plaintiff, as an authorized "person" under S.C. Code Ann. § 32-1-20, is entitled to bring this action against Defendant as the gambling "winner" to recover treble the value of the Gambling Losers' losses, plus the costs of this suit.

59. One moiety of any recovery shall go to Plaintiff, and the other moiety shall go to the county or counties in which the offenses were committed, as required by S.C. Code Ann. § 32-1-20.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Citizens for Equal Enforcement respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant Dave & Buster's Entertainment, Inc.:

(a) Compelling the Defendant to identify the amount of money lost per customer at each of its South Carolina locations within one year preceding this action as provided in S.C. Code Ann. § 32-1-30;

(b) Awarding treble the value of all gambling losses sustained by Gambling Losers at Defendant's South Carolina locations in excess of $50.00 at any single time or sitting, pursuant to S.C. Code Ann. § 32-1-20;

14

(c)     Awarding costs of suit, including reasonable attorney's fees to the extent permitted by law;

(d)     Allocating one moiety of any recovery to Plaintiff and the other moiety to the county or counties in South Carolina in which Defendant's offenses were committed, as required by S.C. Code Ann. § 32-1-20;

(e)     Declaring that Defendant's operation of redemption gaming machines at its South Carolina locations constitutes illegal gambling under South Carolina law; and

(f)     Granting such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

By:     *s/ James M. Griffin*
James M. Griffin, Fed. ID 1053
Margaret N. Fox, Fed. ID 10576
GRIFFIN HUMPHRIES LLC
Post Office Box 999
Columbia, South Carolina 29202
(803) 744-0800
jgriffin@griffinhumphries.com
mfox@griffinhumphries.com

Badge Humphries, Fed. ID 9550
GRIFFIN HUMPHRIES LLC
2113 Middle Street, Suite 305
Sulivan's Island, South Carolina 29482
(843) 883-7444
bhumphries@griffinhumphries.com

ATTORNEYS FOR PLAINTIFF

Columbia, South Carolina
April 15, 2026